**MUNICIPALITIES – CONSTITUTIONAL LAW – EQUAL PROTECTION – PRIVILEGES AND IMMUNITIES – RESIDENCY REQUIREMENTS FOR LOCAL GOVERNMENT EMPLOYMENT**

September 25, 1995

*The Honorable D. Bruce Poole*
*House of Delegates*

You have asked for our opinion concerning Chapter 619 (House Bill 70) of the Laws of Maryland 1995, which prohibits local governments from requiring residence within their jurisdiction as a condition of employment. You pose two questions about Chapter 619: whether it applies to Hagerstown, and whether it would prohibit a local government from requiring residence in the State as a condition of employment.

Our opinion is as follows: Chapter 619 does apply to Hagerstown, but it does not prohibit Hagerstown or any other local government from requiring residence in the State as a condition of employment. Moreover, we have concluded that such a restriction could be imposed by a local government without violating constitutional limitations.

**I**

**Applicability of Chapter 619**

Chapter 619 amended Article 24, §1-107(b)(1) of the Maryland Code to provide as follows: "A county or municipal corporation may not require an employee to reside within the county or municipal corporation or within a required distance of the county or municipal corporation as a condition of employment." Chapter 619's title provides that it applies to "Baltimore City, each county, each municipal corporation, and certain regional agencies."[1] Thus, Chapter 619 applies to every municipal corporation, including Hagerstown, unless this application were unconstitutional.

---

[1] Chapter 619 does not affect other *State* law imposing residency requirements. *See, e.g.,* Article 33, §2-6(d)(2).

It is not. To be sure, Article XI-E, §3 of the Maryland Constitution provides that any municipal corporation has the power and authority to amend or repeal its charter or local laws "relating to the incorporation, organization, government, or affairs" of that municipal corporation. This grant of home rule applies to all of the incorporated cities, towns, and villages in the State except Baltimore City. *Hitchens v. City of Cumberland*, 208 Md. 134, 139, 117 A.2d 854 (1955). Municipalities may legislate on matters within their jurisdiction so long as the laws adopted do not conflict with any applicable public general or public local law enacted by the General Assembly. *Allied Vending, Inc. v. City of Bowie*, 332 Md. 279, 295, 631 A.2d 77 (1993); 67 *Opinions of the Attorney General* 307, 308, and 313 (1982). Conversely, to prevent legislative interference with municipal home rule, Article XI-E, §1 limits the authority of the General Assembly to legislate for particular municipal corporations, providing that "the General Assembly shall act in relation to the incorporation, organization, government, or affairs of any such municipal corporation only by general laws which shall in their terms and in their effect apply alike to all municipal corporations."

Chapter 619 applies to all municipal corporations in the State. Therefore, it is a valid law and prevails over inconsistent local provisions. *See City of Gaithersburg v. Montgomery County*, 271 Md. 505, 318 A.2d 509 (1974).[2]

## II

### Scope of Chapter 619

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423 (1995). The first step is to "examine the primary source of legislative intent, the words of the statute, giving them their ordinary and natural meaning." *Whack v. State*, 338 Md. 665, 672, 659 A.2d 1347 (1995).

Chapter 619 expressly provides that a municipal corporation may not require residency in that municipal corporation or within a

---

[2] The analysis and result would be substantially the same with respect to home rule counties.

set distance of it.[3]  It further states that a "municipal corporation may not discriminate between residents and *other citizens of the State* in employment, promotion, demotion, layoff, and discharge decisions." Article 24, §1-107(b)(2) (emphasis added).

These provisions make no mention of requirements that municipal employees reside in the State and provide no protection for residents of other states.  Thus, under the plain language of the statute, a municipal corporation is not barred from imposing a requirement of State residency.  Furthermore, nothing in the legislative history suggests any intent to bar discrimination against citizens of other states.  Therefore, it is our view that Chapter 619 does not prohibit Hagerstown or any other municipality from requiring that its employees reside in Maryland.


## III

### Constitutionality of State Residency Requirement

A requirement that government employees live in or near the jurisdiction in which they are currently employed was found by the Supreme Court to have a rational basis and therefore withstood an equal protection challenge. *McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645, 646 (1976).  *See also Detroit Police Officers Assoc. v. City of Detroit*, 190 N.W.2d 97 (Mich. 1971), *appeal dismissed for want of a substantial federal question*, 405 U.S. 950 (1972); 60 *Opinions of the Attorney General* 85, 86 (1975).[4] The rational basis is found in the fact that employees who reside in the State are more likely to spend their money in the State, thereby returning an economic benefit. *Winkler v. Spinnato*, 530 N.E.2d 835, 837 (N.Y. 1988), *cert. denied*, 490 U.S. 1005 (1989). Moreover, State residents are likely to have greater loyalty and

---

[3] Chapter 619 renders unenforceable any prior agreements by public employees to move into the jurisdiction of the employer. *See* letter of advice from Assistant Attorney General Robert A. Zarnoch, Counsel to the General Assembly, to Delegate Donald C. Fry (July 31, 1995).

[4] In contrast, durational residency requirements, which provide that employees must have resided in a jurisdiction for a period of time before they are hired, have been found to implicate the fundamental right of travel and will be upheld only if they meet strict scrutiny. *Grace v. City of Detroit*, 760 F. Supp. 646 (E.D. Mich. 1991).

commitment to the State than nonresidents. *Id.* They are also more likely to understand and identify with the problems of the area they serve. *Simien v. City of San Antonio*, 809 F.2d 255 (5th Cir. 1987). Therefore, in our view, a municipal requirement that employees reside within the State would withstand an equal protection challenge.

The remaining question is whether the residency requirement would violate the Privileges and Immunities Clause of Article 4 of the United States Constitution, which provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." This question involves a two-part inquiry: first, whether the right involved is "fundamental" and thus protected by the Clause, *The Slaughter-House Cases*, 83 U.S. (16 Wall. 36, 76 (1872); and second, if a fundamental right is involved, whether the discrimination bears a close relation to "substantial reasons" justifying it. *Toomer v Witsell*, 334 U.S. 385, 396 (1948).

The pursuit of a common calling is a fundamental right protected by the Clause. *Hicklin v. Orbeck,* 437 U.S. 518, 524 (1978). However, in *United Bldg. & Const. v. Mayor & Council of Camden*, 465 U.S. 208, 219 (1984), the Supreme Court stated that "[p]ublic employment ... is qualitatively different from employment in the private sector" and further noted that there was no fundamental right to public employment for purposes of the Equal Protection Clause. The Court did not decide the issue whether public employment was a fundamental right, because the case involved private employment. *Cf. International Organization of Masters, Etc. v. Andrews*, 831 F.2d 843, 846 (9th Cir. 1987) (whether public employment is a fundamental right within the Privileges and Immunities Clause remains unsettled).

Nevertheless, in *Salem Blue Collar Workers Ass'n v. City of Salem*, 33 F.3d 265 (3d Cir. 1994), *cert. denied*, 115 S. Ct. 1505 (1995), the Third Circuit determined that denial of public employment based on residency did not violate the Privileges and Immunities Clause. "Based on our reading of the Supreme Court cases in this area, we hold that direct public employment is not a privilege or fundamental right protected by the Privileges and Immunities Clause ...." 33 F.3d at 270. The analysis in this case is correct, in our view; residency requirements for public employees do not violate the Privileges and Immunities Clause. *Cf. Montgomery*

*County v. Walsh*, 274 Md. 502, 520, 336 A.2d 97 (1995) *appeal dismissed for want of a substantial federal question*, 424 U.S. 901 (1976) ("there is no constitutional right to public employment as such ...").

## IV

## Conclusion

In summary, it is our opinion that:

1.     Hagerstown, like all other municipalities and counties, is subject to Chapter 619's prohibition of local residency requirements for its employees.

2.     Hagerstown, like other political subdivisions, remains free to impose a State residency requirement for its employees.

J. Joseph Curran, Jr.
*Attorney General*

Kathryn M. Rowe
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*